IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

SUSY K. ADCOCK, )
 )
        Plaintiff, )
 )
v. )   Case No. CIV-16-218-KEW
 )
NANCY A. BERRYHILL, Acting )
Commissioner of Social )
Security Administration, )
 )
        Defendant. )

**OPINION AND ORDER**

Plaintiff Susy K. Adcock (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951); *see also*, <u>Casias</u>, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 57 years old at the time of the ALJ's decision. Claimant completed her high school education and obtained an associate's degree in business. Claimant has worked in the past as an office manager, receptionist, bank teller, librarian assistant, and video store clerk. Claimant alleges an inability to work beginning November 5, 2012 due to limitations resulting from depression, stress, mood disorder, drug addiction, sciatic nerve

pain, disc deterioration, heart disease, high blood pressure, anxiety, and alcoholism.

## Procedural History

On February 4, 2013, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On July 22, 2014, an administrative hearing was held before Administrative Law Judge ("ALJ") Bernard Porter in McAlester, Oklahoma. By decision dated October 30, 2014, the ALJ denied Claimant's request for benefits. The Appeals Council denied review on March 28, 2016. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform her past relevant work.

## Errors Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to properly evaluate the medical source evidence; (2) failing to

4

perform a proper analysis at step four; and (3) failing to make a proper credibility determination.

**Consideration of the Medical Source Evidence**

In his decision, the ALJ found Claimant suffered from the severe impairments of lumbar disc disease, rheumatoid arthritis, a history of polysubstance abuse, hypertension, anxiety disorder, depressive disorder, fibromyalgia, and small vessel ischemic disease. (Tr. 21). The ALJ determined Claimant retained the RFC to perform light work except that she could lift/carry 20 pounds occasionally and ten pounds frequently; stand for up to six hours, walk for up to six hours, and sit for up to six hours; could push and pull as much as she could lift and carry; was limited to occasional climbing of ramps and stairs; could never climb ladders and scaffolds; could frequently balance, stoop, and crouch; could occasionally kneel; and could never crawl. Claimant could not work around unprotected heights and moving mechanical parts. She should avoid temperature extremes. Claimant was limited to frequent interactions with supervisors, co-workers, and the public. She could require time off tasks accommodated by normal breaks. (Tr. 25).

At step four, the ALJ concluded Claimant retained the RFC to perform her past relevant work as a bank teller and assistant

librarian after consultation with a vocational expert. (Tr. 30). As a result, the ALJ determined Claimant was not disabled from November 5, 2012 through the date of the decision. Id.

Claimant contends the ALJ failed to properly consider and evaluate the opinion of her treating psychiatrist, Dr. Joe Speer. Dr. Speer completed a mental health medical source statement pertaining to Claimant's condition on March 5, 2013. He stated Claimant suffered from bipolar disorder which imposed more than minimal limitations on her. He characterized her condition as having frequent mood swings, anger, anxiety, and depression. She had an inability to maintain meaningful employment and difficulty relating to other people. Dr. Speer described Claimant's current functional limitations as

> Pt. is unable to hold a job, has had several in past few years having been terminated or quitting due to mood swings. Pt. having bouts of [alcohol] use, placed residentially in treatment 3 mos. ago. Maintains a dysfunctional relationship w/her immediate family. Decompensations frequent.

(Tr. 822).

The ALJ concluded that Dr. Speer's opinion was entitled to "little weight", however, because he found the opinion to be "inconsistent with the medical evidence of record and the claimant's activities of daily living and contradicts the other medical opinion evidence." (Tr. 29). The ALJ recognized that

6

Claimant sought mental health treatment from Dr. Speer and took Paxil, Pristiq, Trazodone, and Valium for her mental impairments. He noted Claimant found the medication to be helpful except for treating her anxiety. (Tr. 27). He also noted she received a GAF score of 72 before her amended onset date but diminished its impact on his decision. Id.

The ALJ also cited to Claimant's activities of daily living. He stated Claimant could attend AA meetings, attend church, feed her dogs, do laundry, pay bills, spend thirty minute to an hour on her computer, visit the doctor, drive about five times per week, goes to the store, attends her grandson's sports games, and drove one hour to get to the hearing to testify. (Tr. 28).

The ALJ gave "significant weight" to the state agency consultative professionals' opinions on Claimant's mental status. The psychologists, Dr. Ron Cummings and Dr. Diane Hyde, came to their conclusions after reviewing Claimant's medical records. Dr. Hyde found under the "B" criteria that Claimant had mild restrictions in activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and one or two episodes of decompensation of extended duration. (Tr. 76). She concluded from her review of the records that Claimant's primary

mental impairment appeared to be alcohol abuse. She found Claimant responded to treatment for her depression and alcohol. Claimant engaged in various activities of daily living, experiences some problems with memory, concentration, and anger, as well as some problems getting along with others. Dr. Hyde found while Claimant alleged her symptoms were debilitating, the objective evidence did not fully support her claim. She further stated that "[t]he combination of clinical data and descriptive information suggests that functional limitations are mildly to moderately impaired." (Tr. 77). She concluded that the medical record did not support evidence of frequent mood swings, anger, and difficulties relating to people. Id.

Dr. Hyde found Claimant had limitations in understanding and memory. Claimant's ability to understand and remember detailed instructions was "moderately limited". She was also found to have concentration and persistence limitations which "moderately limited" her ability to carry out detailed instructions. Dr. Hyde concluded Claimant could perform simple and some complex tasks with routine supervision, could relate to others, and could adapt to a work situation. (Tr. 80-81).

Dr. Cummings made the identical findings but added that Claimant did not allege any new mental impairments or worsening of

8

any psychologically based symptoms at reconsideration. Subsequent treatment notes from Creek Nation Behavioral Health indicated Claimant was not using alcohol or drugs, her medications were helpful with no signs of psychosis or mania, fully oriented, agitated behavior, clear speech, anxious mood, average intellect, cooperative attitude, good judgment, and logical thought processes. Claimant was diagnosed with major depressive disorder. (Tr. 94).

Dr. Cummings made the identical findings of limitation as determined by Dr. Hyde. (Tr. 97-98).

After finding these opinions were entitled to "significant weight" in one portion of the decision, the ALJ then found the findings of mild restrictions in activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace and one or two episodes of decompensation were only entitled to "some weight." Instead, the ALJ determined the record supported a finding of mild restriction of activities of daily living, mild difficulties in maintaining concentration, persistence, or pace, and moderate difficulties in maintaining social functioning. He also found no episodes of decompensation "that would rise to the level required by the 'paragraph B' criteria of the Listings." (Tr. 29).

9

This Court has carefully reviewed the records from Dr. Speer which appear in the record. On May 14, 2013, Dr. Speer found Claimant's mental status to be largely unremarkable other than she was agitated and anxious. She was then diagnosed with major depressive affective disorder, single episode and "other suspected mental condition." (Tr. 922-23).

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the

nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

Dr. Speers' own treatment records do not support the level of limitation he urged in his source statement. Moreover, the level and nature of Claimant's activities of daily living contradict Dr. Speers' opinion and his restrictions are not supported by the other medical evidence of record. As a result, the ALJ did not err in

11

his assessment of Dr. Speers' opinion and rejection of further restrictions in the RFC.

**Step Four Analysis**

Claimant suggests that the ALJ's RFC was erroneous because it included frequent interaction with the public which is not supported by the evidence. This Court has determined that the ALJ's RFC was supported by substantial evidence.

Additionally, Claimant contends the ALJ and vocational expert erred in identifying bank teller and library assistant as past relevant work when the agency paperwork indicates these jobs were not past relevant work. (Tr. 82, 99). The ALJ analyzed these jobs and found them to be past relevant work. (Tr. 30). He was entitled to his own analysis rather than adopting that of another. Moreover, the vocational expert identified these jobs as available given Claimant's level of limitation in the RFC. (Tr. 64-66).

Claimant also asserts the ALJ failed to perform the necessary analysis under step four. In analyzing Claimant's ability to engage in her past work, the ALJ must assess three phases. In the first phase, the ALJ must first determine the claimant's RFC. Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996). This Court has determined that the ALJ's RFC was supported.

In the second phase, the ALJ must determine the demands of the

claimant's past relevant work.  Id.  In making this determination, the ALJ may rely upon the testimony of the vocational expert. Doyal v. Barnhart, 331 F.3d 758, 761 (10th Cir. 2003).  The ALJ in this case posed a hypothetical which the vocational expert identified as being met by the demands of Claimant's past relevant work.  (Tr. 64-66).

The third and final phase requires an analysis as to whether the claimant has the ability to meet the job demands found in phase two despite the limitations found in phase one.  Winfrey, 92 F.3d at 1023.  The ALJ made the necessary findings that Claimant could meet the job demands of her past relevant work.  (Tr. 30).  As a result, the ALJ did not err at step four.

### Credibility Determination

Claimant contends the ALJ failed to properly assess her credibility.  The ALJ concluded that her statements were "not entirely credible" in boilerplate language.  However, as related earlier in this Opinion and Order, Claimant engaged in an array of activities of daily living that were inconsistent with the level of limitation to which she testified.  The ALJ also recited the examination findings which contradicted Claimant's statements of disabling pain.  (Tr. 26-27).  Evidence indicated full range of motion in her spine, normal gait, normal strength and no joint

13

swelling. (Tr. 26, 290, 743, 752, 913).

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

The ALJ relied upon appropriate factors in evaluating the

credibility of Claimant's statements. The nature of Claimant's treatment, the objective medical testing, and the inconsistencies between the claimed restrictions and Claimant's activities all form specific and legitimate reasons for the ALJ's questioning of Claimant's credibility.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED**.

IT IS SO ORDERED this 28th day of September, 2017.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE